COURT OF APPEALS OF VIRGINIA

Present: Judges Malveaux, Fulton and Friedman
Argued at Norfolk, Virginia

ROSCOE MCNEIL, JR.

                                       MEMORANDUM OPINION* BY
v.      Record No. 0568-21-1        JUDGE MARY BENNETT MALVEAUX
                                           SEPTEMBER 27, 2022

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF PORTSMOUTH
Kenneth R. Melvin, Judge

(Gregory K. Matthews; Gregory K. Matthews, PC, on brief), for
appellant. Appellant submitting on brief.

Rebecca M. Garcia, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.

Roscoe McNeil, Jr. ("appellant") was convicted in a bench trial of malicious wounding, in

violation of Code § 18.2-51.[1] On appeal, he challenges the sufficiency of the evidence and argues

that the Commonwealth failed to prove he acted with malice. For the following reasons, we affirm

the trial court.

## I. BACKGROUND

"'In accordance with familiar principles of appellate review, the facts will be stated in the

light most favorable to the Commonwealth, the prevailing party at trial.' Accordingly, we regard as

true all credible evidence favorable to the Commonwealth and all inferences that may reasonably be

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Appellant was indicted for aggravated malicious wounding, in violation of Code
§ 18.2-51.2, but convicted of the lesser-included offense of malicious wounding.

drawn from that evidence." *Meade v. Commonwealth*, 74 Va. App. 796, 802 (2022) (citation omitted) (quoting *Gerald v. Commonwealth*, 295 Va. 469, 472 (2018)).

In September 2019, appellant lived in a rented room in the home of Olenthia Harrington-Jude and her husband, Alfred Jude. Olenthia testified that on the evening of September 5, she made a bowl of tuna salad for herself, Alfred, and appellant. Although appellant usually bought his own food and cooked for himself, Olenthia and her husband were sharing with appellant that evening.

After appellant filled up a large bowl with almost all the tuna salad, Olenthia admonished him and accused him of giving food to people in the park. Appellant then walked toward his room with the tuna salad, and Olenthia followed and asked him why he kept taking food out of the house. Olenthia testified that as she approached appellant's room she did not have a weapon or other object in her hands, did not touch appellant, and "did not holler . . . [or] curse" but spoke to appellant in a normal tone. When appellant attempted to close his door, Olenthia "put [her] foot up there to hold the door" so appellant could not shut it in her face.

After putting her foot in the doorway, Olenthia asked appellant "why [he] took my food out [of] the house." Appellant opened the door and began pushing Olenthia and stabbing her with a knife. Olenthia characterized the weapon as a "[r]egular knife," not a "steak knife." She stated that appellant stabbed her four times, including on her stomach and wrist, and the trial court observed her scars. The stabbing caused Olenthia to bleed, and she "holler[ed] a lot" from the pain. Olenthia went to the hospital, where her wounds were stitched and bandaged.

Alfred testified that he was in his bedroom when he heard his wife and appellant arguing about food. Appellant called Olenthia "[a]ll kinds of dumb bitches," and Alfred called 911 when he heard Olenthia say, "[h]e's stabbing me. He's stabbing me." Alfred observed his wife "bleeding bad" from multiple stab wounds. He also stated that there was a footprint on appellant's door from

- 2 -

when Olenthia was "trying to hold it and talk to him" and appellant "tr[ied] to slam the door in [her] face."

Portsmouth Police Officers Shelton-Gonzalez and Starowicz came to the home. Olenthia told the officers that appellant had stabbed her with a knife from his dresser, and the officers noted stab wounds to her abdomen, chest, left shoulder, and left forearm. Officer Starowicz testified that appellant sounded intoxicated, exhibited slurred speech, and had an odor of alcohol coming from him. Appellant repeatedly told the officer that he paid more rent than Olenthia and that she had been pushing on his door. He also stated that he had taken the knife from Olenthia and "stabbed her one time but was unsure where he stabbed her."

After the Commonwealth rested, appellant moved to strike the evidence and the trial court denied the motion. Appellant then testified in his own defense. He asserted that Olenthia's "whole statement" was "a lie," although he acknowledged on cross-examination that he had stabbed her. Appellant said that on the evening of September 5, he had cooked a dozen eggs. Olenthia asked appellant if she could use the eggs to make tuna salad and also asked him for some other ingredients. After the food had been prepared, appellant took "two spoons full" and Olenthia accused him of giving food away to others. Appellant denied Olenthia's accusation and told her she could "have it back." He then walked to his room, shut the door, made a phone call, and tried to find a football game on the television.

At that point, appellant said, Olenthia "c[a]me pushing at my door." Appellant demonstrated to the court that he stood behind his partially open door and explained that he and Olenthia could not see each other. Appellant testified that he "begged [Olenthia] to let me shut the door," "begged her to leave me alone," and "did not argue with her." He also stated that he called a member of his church "to come and get me because she's arguing, and I didn't want to argue with her." When asked how Olenthia "ended up bleeding," appellant said that he "just stuck the knife

outside the door." Appellant explained that he had the knife in his room because he ate there and had to cut up his food due to dental problems. He said that at the time he stuck out the knife, all he could see was Olenthia's "arm and a foot in the door." Appellant also alleged that Olenthia had been drinking and that Alfred watched the altercation. He denied stabbing Olenthia more than once.

After appellant rested, he renewed his motion to strike. The trial court granted the motion with respect to aggravated malicious wounding but denied it with respect to malicious wounding.

Appellant contended in closing that both he and Olenthia had been arguing and "getting hot and bothered," he had attempted "to retreat from that argument," and taking the argument together with Olenthia's efforts to enter his room, "there is enough provocation to negate the [element of] malice." The trial court disagreed and convicted appellant.

This appeal followed.

## II. ANALYSIS

Appellant challenges the sufficiency of the evidence to sustain his conviction for malicious wounding.

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *Smith v. Commonwealth*, 296 Va. 450, 460 (2018) (alteration in original) (quoting *Commonwealth v. Perkins*, 295 Va. 323, 327 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Secret v. Commonwealth*, 296 Va. 204, 228 (2018) (alteration in original) (quoting *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). "If there is evidentiary support for the conviction,

- 4 -

'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018) (quoting *Banks v. Commonwealth*, 67 Va. App. 273, 288 (2017)).

Appellant argues that the evidence was insufficient to prove he acted with malice and that, instead, the evidence demonstrated that he acted under the heat of passion when he stabbed Olenthia. He contends that there was an argument between Olenthia and himself and he tried to get away from her, but Olenthia followed him to his room and "tr[ied] to invade his space." Further, Olenthia's injuries were consistent with his testimony that he "was trying to protect his space and that both parties were agitated." Accordingly, appellant contends, "the circumstances . . . show that [he] was under the influence of passion" when he stabbed Olenthia, rather than that he acted with malice.[2]

"The presence of malice 'is a question of fact to be determined by [the trier of fact].'" *Fletcher v. Commonwealth*, 72 Va. App. 493, 507 (2020) (alteration in original) (quoting *Long v. Commonwealth*, 8 Va. App. 194, 198 (1989)). This Court defers to the trial court's findings of fact unless they are plainly wrong or without evidentiary support. *Green v. Commonwealth*, 72 Va. App. 193, 200 (2020).

"Malice inheres in the 'doing of a wrongful act intentionally, or without just cause or excuse, or as a result of ill will.'" *Tizon v. Commonwealth*, 60 Va. App. 1, 11 (2012) (quoting *Dawkins v. Commonwealth*, 186 Va. 55, 61 (1947)). It is "evidenced either when the accused acted with a sedate, deliberate mind, and formed design, or committed any purposeful and cruel act without any or without great provocation." *Fletcher*, 72 Va. App. at 507 (quoting *Branch v.*

---

[2] Because appellant challenges only the sufficiency of the evidence of malice, we do not consider the sufficiency of the evidence of the other elements of malicious wounding. *See* Code § 18.2-51 (enumerating the elements of malicious wounding); *Burkeen v. Commonwealth*, 286 Va. 255, 259 (2013) (same).

*Commonwealth*, 14 Va. App. 836, 841 (1992)).  Malice "may be directly evidenced by words, or inferred from acts and conduct which necessarily result in injury."  *Ramos v. Commonwealth*, 71 Va. App. 150, 162 (2019) (quoting *Burkeen v. Commonwealth*, 286 Va. 255, 259 (2013)).  Thus, "malice may be either express or implied," *Watson-Scott v. Commonwealth*, 298 Va. 251, 256 (2019) (quoting *Essex v. Commonwealth*, 228 Va. 273, 280 (1984)), and it "may be proved by circumstantial evidence," *Palmer v. Commonwealth*, 71 Va. App. 225, 237 (2019) (quoting *Canipe v. Commonwealth*, 25 Va. App. 629, 642 (1997)).  "Implied malice may be inferred from 'conduct likely to cause death or great bodily harm, willfully or purposefully undertaken.'"  *Id.* Of further relevance here, "[m]alice may be inferred from the 'deliberate use of a deadly weapon unless, from all the evidence, [there is] reasonable doubt as to whether malice existed.'" *Fletcher*, 72 Va. App. at 507 (second alteration in original) (quoting *Strickler v. Commonwealth*, 241 Va. 482, 495 (1991)).  Such a weapon is "one which is likely to produce death or great bodily injury from the manner in which it is used," and "[w]hether a weapon is to be regarded as deadly often depends more on the manner in which it has been used than on its intrinsic character."  *Id.* (quoting *Pannill v. Commonwealth*, 185 Va. 244, 254 (1946)).

"[D]eliberate and purposeful acts may nonetheless be done without malice if they are done in the heat of passion."  *Witherow v. Commonwealth*, 65 Va. App. 557, 567 (2015) (quoting *Williams v. Commonwealth*, 64 Va. App. 240, 249 (2015)).  "Malice and heat of passion are mutually exclusive; malice excludes passion, and passion presupposes the absence of malice." *Dandridge v. Commonwealth*, 72 Va. App. 669, 681 (2021) (quoting *Canipe*, 25 Va. App. at 643).  "Heat of passion refers to the *furor brevis* which renders a man deaf to the voice of reason."  *Id.* (quoting *Woods v. Commonwealth*, 66 Va. App. 123, 131 (2016)).  *See also Heat of Passion*, *Black's Law Dictionary* (11th ed. 2019) (defining heat of passion as "[r]age, terror, or furious hatred suddenly aroused by some immediate provocation, usu[ally] another person's

- 6 -

words or actions"). "'Heat of passion is determined by the nature and degree of the provocation and may be found upon rage, fear, or a combination of both.' [It] 'excludes malice when provocation reasonably produces fear that causes one to act on impulse without conscious reflection.'" *Witherow*, 65 Va. App. at 567 (first quoting *Barrett v. Commonwealth*, 231 Va. 102, 106 (1986); then quoting *Graham v. Commonwealth*, 31 Va. App. 662, 671 (2000)). "Generally, whether [an act] was done in the heat of passion upon reasonable provocation is a . . . question" for the trier of fact. *Barrett*, 231 Va. at 106.

We conclude that the evidence, viewed in the light most favorable to the Commonwealth, supports the trial court's implicit finding that appellant acted with malice.[3] Olenthia testified that after she accused appellant of giving food to people in the park, appellant walked away from her and toward his room. Olenthia followed and asked appellant why he kept taking food out of the house. As she approached appellant's room, Olenthia did not touch appellant, had no weapon or any other object in her hands, did not curse or "holler," and spoke to appellant in a normal tone. She then used her foot to prevent appellant from shutting his door in her face. Alfred testified that while Olenthia was trying to keep the door open and talk to appellant, appellant called her insulting names. Olenthia further testified that after she asked appellant "why [he] took [her] food out [of] the house," appellant opened the door and pushed her and stabbed her repeatedly with a knife.[4] Olenthia told police that the knife had been taken from appellant's dresser, and appellant acknowledged that he had a knife in his room that he used to cut up the food that he often ate there. From this evidence, the trial court could reasonably infer that when appellant

---

[3] *See, e.g.*, *Mounce v. Commonwealth*, 4 Va. App. 433, 435 (1987) (noting that implicit in the appellant's conviction was the trial court's finding that an element of the offense, the evidentiary sufficiency of which the appellant challenged on appeal, had been proven); *Fitzgerald v. Commonwealth*, 227 Va. 171, 174 (1984) (same).

[4] In closing argument at trial, counsel for appellant stated that "[w]e are not disputing that [Olenthia] had at least, maybe, four wounds."

repeatedly stabbed Olenthia with a deadly weapon, he did so wrongfully and intentionally and without provocation, just cause, or excuse—that is, that he acted with malice.

Although appellant contends that he acted in the heat of passion, the evidence does not support that he acted in response to immediate provocation that rendered him deaf to reason or that reasonably produced rage and fear leading to impulsive conduct. Appellant's own testimony established that before he stabbed Olenthia, he responded to her in a reasoned and deliberate way. Appellant stated that he pleaded with Olenthia to be allowed to close his door, pleaded with her to leave him alone, and did not argue with her. He also testified that he called a member of his church to come and get him because Olenthia was "arguing, and I didn't want to argue with her."[5] Additionally, the evidence discussed above supports the conclusion that when Olenthia spoke with appellant through his open door, she did so in a normal tone of voice and did not have a weapon or any other object in her hands. Appellant responded by stabbing Olenthia repeatedly. Despite appellant's assertion that he only stabbed her once, Olenthia suffered four separate wounds to various parts of her body. Based upon the evidence before us, the record does not support that appellant was provoked by Olenthia to act out of the heat of passion. Accordingly, the trial court was neither plainly wrong nor without supporting evidence when, in convicting appellant, it implicitly rejected his argument that malice had been negated by the heat of passion.

Because the evidence was sufficient to find that appellant acted with malice, in turn, a rational trier of fact could have convicted appellant of malicious wounding. Accordingly, we find no error by the trial court in convicting appellant.

---

[5] Appellant contends on brief that Alfred's testimony conflicted with Olenthia's and supports his claim that he and Olenthia were arguing and that both parties were "agitated." However, "[t]he trier of fact . . . is free to believe and disbelieve in part or in whole the testimony of any witness." *Davis v. Commonwealth*, 57 Va. App. 446, 463 (2011). Additionally, appellant did not testify that he was "agitated" or that he argued with Olenthia. In fact, as noted above, appellant testified to the opposite—that he did not want to argue with Olenthia and did not do so.

## III. CONCLUSION

The Commonwealth's evidence was sufficient to prove that appellant acted with malice when he stabbed Olenthia multiple times with a knife.  Therefore, we affirm appellant's conviction.

*Affirmed.*